IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SHERRY L. COLLINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 2:11-cv-703-TFM |
| | ) [wo] |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM  OPINION AND ORDER**

Sherry L. Collins ("Complainant" or "Plaintiff" or "Collins") filed applications under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83c, respectively, on September 9, 2009, for a period of disability which allegedly began on August 17, 2007.  (Tr. 23, 143).  Collins testified at a hearing before an Administrative Law Judge ("ALJ") on December 20, 2010.  (Tr. 35-71).  The ALJ issued an unfavorable decision on February 23, 2011. (Tr. 20-22).  The Appeals Council rejected review on June 29, 2011. (Tr. 1-3). The rejection of review made the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Collins timely filed her administrative appeal.

---

[1] Pursuant to the Social Security Independence and program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred tot he Commissioner of Social Security.

The Court has jurisdiction over this lawsuit pursuant to 42 U.S.C. §§ 405(g) and the parties consent to the undersigned rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636 (c)(1) and M.D. Ala. LR 73.1.  *See also* Docs 12 and 13.  For the reasons that follow, the Court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Collins seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income.  United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405 (2006).  The Court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id.*

## II. BACKGROUND

Ward was born on March 22, 1956, and was 55 years old at the time of the ALJ's decision.  (Tr. 39).  Collins graduated with a bachelor degree in early childhood education.  (Tr. 39).  Collins' past relevant work includes floral designer, sales clerk, lunchroom cashier, department manager (retail), and retail telephone sales.  (Tr. 62-64).  Collins alleges that her period of disability began on August 17, 2009, after suffering from a stroke.

The ALJ found Collins suffers from "status post cardiovascular accident."  (Tr. 25).  The ALJ also found Collins to suffer from non-severe impairments, including

"diabetes mellitus, hypertension, and hypercholesterolemia." (Tr. 26).  The ALJ concluded that "[t]he claimant does not have an impairments or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 26).  The ALJ found "[a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CRF 404.1567(b) and 416.967(b) . . ." (Tr. 26).  The ALJ provided for exceptions related to, e.g. lifting capacity, limits on standing or walking in an 8-hour workday, pushing, pulling, stooping, crouching, kneeling and other range of motions.  *Id.*  The ALJ stated that "[s]he has unlimited reaching the left arm," "[s]he can frequently handle, feel, and finger objects with her right hand, but she is unlimited in handling, feeling and fingering objects with the left." *Id*.

Collins presented medical evidence which spans treatment from August 14, 2009, through October 27, 2010. (Tr. 226-371).  Collins was initially seen at Baptist Medical Center South, on August 14, 2009, by Drs. Joseph Leuschke, Rajeev Nagarad, David C. Montiel, and Ronald Stanton, Jr.,  for a cerebral infarct.  (Tr. 227-90).  Of note, the medical notes indicate that Collins reported "being on medications for the last 27 years because of vertigo which is mainly right-sided and a headache which has been going on for a few days."  (Tr. 227).  Collins was discharged three days later on August 17, 2009, after it was noted "[t]he patient has been doing well" with no new issues shown on a repeat CT and MRI.  (Tr. 228).  Collins also provide medical evidence from Health

Service Inc., which spans medical treatment from September 17, 2009, until December 3, 2009, wherein Collins was monitored by Dr. Michael Randalle, MD., with the majority of the notes and LabCorp testing focusing on Collins' diabetes. (Tr. 293-332).

Collins underwent a consultative examination on January 6, 2010, through MDSI Physician Service, by Dr. James O. Colley, MD. (Tr. 335-40). Dr. Colley notes that Collins has a mass on the right posterior fossa with "[a] magnetic resonance imaging scan revealed a right ischemic cerebellar infarction with mild left cerebellar changes." (Tr. 335). When reviewing Collins' medical history Dr. Colley noted "she also has a history of noncompliance." (Tr. 336). Dr. Colley specifically noted that "[Collins] had been out of her medication (for hypertension and diabetes) for a while prior to being admitted to Baptist Medical Center South on August 13, 2009." *Id*. Dr. Colley reported on the physical examination of Collins that "[t]he claimant was inconsistent. (Tr. 337). Specifically;

> The claimant had no problems taking her shoes and socks off or putting them back on using both hands. She also had no difficulty standing up but when attempting to walk she took short steps with a wide stance. She stated she had poor balance and weakness on the right side. *When leaving she was noted on the sidewalk to have a normal gait with good balance*.

*Id*. (emphasis added). After a thorough evaluation of Collins and her medical history Dr. Colley diagnosed Collins as suffering from "[o]ld right cerebellar infarction with extension across the midline (August 13, 2009)," "Hypertension," and "Insulin dependent diabetes mellitus." (Tr. 340).

Collins underwent a physical Residual Functional Capacity Assessment on January 21, 2010, by Ms. Katrina Paige-Hand, a State Agency specialist. (Tr. 341-48). The evaluation established "[t]he claimant's statements about her symptoms and functional limitations are partially credible as the severity alleged is not consistent with the objective findings from the [medical evidence record] in file." (Tr. 346).

Finally, Collins provided medical records from Lister Hill Health Services, supervised by Dr. Corazon Mulles. (Tr. 352-69). Collins' pharmaceutical history was also provided for the ALJ's consideration for the end of 2009 through the end of 2010. (Tr. 370-71).

The ALJ conducted a thorough review and evaluation of all medical records, as well as the testimony from Collins. (Tr. 26-30).

### III. STANDARD OF REVIEW

The Court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating the court should not re-weigh the evidence). The Court must find the

Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) and *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester*, 792 F.2d at 131).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations

omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.; Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### IV. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). Despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d),

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment(s) severe?
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[4]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357

---

[4] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[5] ("grids") or hear testimony from a Vocational Expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

---

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

## V. STATEMENT OF THE ISSUES

Plaintiff's singular issue is that "the ALJ's residual functional capacity findings are not based on substantial evidence for the entire period at issue." (Pl. Br. 1).

The issue and arguments turn upon this Court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622, 624-25 (11th Cir. 1987).

## VI. DISCUSSION AND ANALYSIS

**A.     The ALJ's RFC is supported by substantial evidence.**

A residual functional capacity (RFC) assessment is used to determine the claimants' capacity to do as much as possible despite their limitations. *See* 20 C.F.R. § 404.1545(a)(1) (2010). "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R.§ 404.1545 (a)). "The determination of residual functional capacity is within the authority of the ALJ and the assessment should be based upon all the relevant evidence of a claimant's remaining ability to do work despite her impairments." *Beech v Apfel*, 100 F.Supp.2d 1323, 1331 (S.D. Ala. 2000) (citing 20 CFR § 404.1546, *Lewis v. Callahan*, 125 F.3d at 1440). At the administrative hearing, "the [ALJ] is responsible for assessing [the claimant's] residual functional capacity." 20 C.F.R. § 404.1546(c) (2010). Whereas the claimant is "responsible for providing the evidence [the ALJ] will use to make a finding about [the claimant's]

residual functional capacity." 20 C.F.R. § 404.1545(a)(3) (2010).  The ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [their] own medical sources. *Id.; Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988) (The ALJ is not required to order a consultative examination unless the record establishes it is necessary to render a fair decision).  "The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." *Freeman v. Barnhart*, 220 Fed. Appx. 957, 959-60 (11th Cir. 2007) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 11th Cir. 1981) (when considering the specificity required the court stated, "[w]hile the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability [plaintiff] claimed.").

The ALJ's finding must be supported by substantial evidence.  *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005).  (Citations omitted).  However, "the law of this Circuit does not require an RFC from a physician." *Langley v. Astrue,* 777 F.Supp.2d 1250, 1257-58 (N.D. Ala. 2011).  Moreover, the court in *Langley* stated that to do otherwise "attempt[s] to place the burden of proving the claimant's RFC on the Commissioner at step five" and this shifting of the burden is "inconsistent with the Commissioner's regulations, Supreme Court precedent and unpublished decisions in this Circuit." *Id.* at 1258-60. (Citations omitted.).

When considering treating physician's opinions in relation to the RFC, this Court looks also to the weight afforded each medical opinion. An ALJ "may reject any medical opinion if the evidence supports a contrary finding." *Williams v. Astrue*, 416 Fed. Appx. 861, 863 (N.D. Fla. 2011) (quoting *Sharfarz v. Bowne*, 825 F.2d 278, 280 (11th Cir. 1987)). That an ALJ discredits the opinion of a consulting physician, or even that of a treating physician for good cause is not error. *Phillips*, 357 F.3d at 1241; *Lewis*, 125 F.3d at 1439-41. Scrutiny of the evidentiary record compels this Court to conclude that the ALJ did not err in according less weight to the opinion of Dr. Banner about Ward's health and functional limitations.

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. *Phillips*, 357 F.3d at 1241. Good cause exists if the opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. *Id.* at 1241-42. The ALJ must give "explicit and adequate reasons for rejecting the opinion of a *treating physician*." *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (emphasis added).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the medical evidence supporting the opinion; consistency with the record as a

whole; specialization in the medical issues at issue; and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527.

After establishing Collins' impairments, both severe and non-severe the ALJ states:

> No medical expert has concluded that the claimant's impairments meet or equal a listed impairment. The claimant's impairments, singularly and in combination, have been compared to all listed impairments. The undersigned finds that the severity of the claimant's impairments does not meet the specific requirements of any of the impairments listed by the Commissioner in Appendix 1. The undersigned also finds that the severity of the claimant's impairments, even in combination, does not equal the level of severity contemplated in the listings.

(Tr. 26). The ALJ then establishes the RFC wherein Collins has the capacity to perform light work, with limitations. *Id*. In establishing the RFC, the ALJ states that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." *Id*.

The ALJ reviewed all the medical evidence provided along with the claimant's subjective testimony regarding her daily activities with accompanying levels of pain. (Tr. 26-29). The ALJ noted that "symptoms alone do not establish disability unless medical signs and laboratory findings show that there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. (Tr. 28). (citing 20 CFR 404.1529 and 416.929 and SSRs 96-4p). The ALJ assigned greater weight to Dr. Colley because [p]ursuant to 20 CRF 404.1527(d)(5) and 416.927)d)(5), we generally give more weight to the opinion of a specialist about medical issues related to his area of specialty than

to the opinion of a source who is not a specialist. (Tr. 29). Dr. Colley was given significant weight as an examining specialist physician and the ALJ found that his "opinion is consistent with the records and reports obtained from the claimant's treating physicians and with the evidence as a whole." *Id*.

While the ALJ states that "[i]n this case, no treating physician has offered an opinion upon which to assess the claimant's residual functional capacity" the ALJ relied heavily on the consultative examination and report conducted on January 6, 2010, by Dr. James Colley, MD, as well as a physical RFC assessment based on Dr. Colley's report by Ms. Katrina C. Paige-Hand, a state agency expert on RFCs. (Tr. 335-49). Of note to the Court, Collins alleged difficulty in both balance and walking while meeting with Dr. Colley. (Tr. 337). However, upon leaving Dr. Colley's office, Collins was observed by Dr. Colley who stated, "[w]hen leaving she was noted on the sidewalk to have a normal gait with good balance." *Id*. This lead Dr. Colley to state that "[t]he claimant was inconsistent." *Id*. Likewise, Ms. Paige-Hand stated that "[t]he claimant's statements about her symptoms and functional limitations are partially credible as the severity alleged is not consistent with the objective findings from the MER in file." (Tr. 346).

The ALJ provided a non-treating/non-examining medical expert, Dr. William Whatley, MD., at the trial along with Dr. Patrick Sweeney, Ph.D., as a vocational expert (VE) at the administrative hearing. Upon examination by the ALJ, Dr. Whatley stated that Collins' cerebella infarct "should not cause any motor dificits; the motor strips are totally in a

different area of the brain, so her impairments should be balanced." (Tr. 60). He also stated, that based on the medical records stagmis vertigo, the only other thing, has been resolved. *Id*. Counsel for Collins asked no questions. (Tr. 61). The VE established Collins' previous work levels, and based on the RFC testified that Collins would be able to perform past work. (Tr. 61-70). Again, Counsel for Collins had no questions to rebut or clarify. (Tr. 70).

The Court notes that there have been cases that have overturned the ALJ's decisions based on the RFC evaluation but also recognizes that those cases are significantly distinguished from the Collins case. *See Thomason v. Barnhart,* 344 F. Supp.2d 1326 (N.D. Ala. 2004) and *Coleman v. Barnhart,* 264 F. Supp. 2d 1007 (S.D. Ala. 2003). In *Thomason* the lack of a formal assessment by a physician of plaintiff's RFC was but one of *six reasons* why the court concluded that substantial evidence did not support the decision denying benefits. 344 F. Supp. 2d at 1329-30. (emphasis added). Most importantly, there was no citation by the *Thomason* Court to any source of law requiring such an assessment by a physician for the purposes of making an RFC determination. *Id.* Similarly in *Coleman,* the Court concluded that the ALJ's RFC determination was not supported by substantial evidence where "particularly in light of plaintiff's numerous severe impairments" the RFC was not supported by an assessment completed by a physician. 264 F. Supp. 2d at 1010-11. Furthermore, the *Coleman* Court likewise gave no citation to any source of law requiring a physician's assessment for the purposes of making an RFC determination. *Id*

Indeed, Judge Foy Guin of the Northern District has recently addressed this specific question and concluded that "the law of this Circuit does not require an RFC from a physician." *Langley,* 777 F.Supp.2d at 1257-58.  Moreover, the court in *Langley* disagreed with the *Coleman* case cited above because its reasoning "attempt[s] to place the burden of proving the claimant's RFC on the Commissioner at step five" and this shifting of the burden is "inconsistent with the Commissioner's regulations, Supreme Court precedent and unpublished decisions in this Circuit." *Id.* at 1258-60. (Citations omitted.).

The Court is persuaded by the reasoning of *Langley* Court.  Accordingly the Court concludes that Collins' argument fails and the ALJ did not err in finding Plaintiff's RFC without the benefit of a physician's assessment in the record, that the RFC was conducted in accordance with all social security administration guidelines and that substantial evidence exists to show that the ALJ's RFC assessment is in compliance with Eleventh Circuit requirements.

## V. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, ORDERED that the decision of the Commissioner is AFFIRMED.  A separate judgment will be entered.

DONE this the 9th day of May, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE